**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ERCHONIA CORPORATION LLC,

    Plaintiff,

      v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.

No. 25 CV 13039

Judge Georgia N. Alexakis

**MEMORANDUM OPINION AND ORDER**

Plaintiff Erchonia Corporation LLC alleges that seven entities located in the People's Republic of China have counterfeited its patented weight loss device, the Emerald Laser. Before the Seventh Circuit's recent decision in *Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co., Ltd.*, 177 F.4th 793 (7th Cir. 2026), the Court granted Erchonia's motion to serve defendants via electronic means under Federal Rule of Civil Procedure 4(f)(3). Since then, no defendant has pleaded or otherwise defended in this action, and Erchonia has moved for entry of all defendants' default and default judgment against all defendants pursuant to Federal Rule of Civil Procedure 55. [41]. For the reasons that follow, the Court denies that motion.

## I.    Background

According to Erchonia, it developed and released the Emerald Laser, an FDA-approved weight loss treatment device that employs technology patented by Erchonia. [42] at 2. In October 2025, Erchonia sued seven entities that it alleges

infringed on Erchonia's patents by selling a product known as the MaxMaster Slim. [1]. Erchonia made several other allegations that are typical in so-called "Schedule A" cases. *See Kangol*, 177 F.4th at 795–96; *see also Liu v. Monthly*, 170 F.4th 1090, 1092 (7th Cir. 2026). Erchonia alleged that the defendant entities are "an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell and/or import into the United States" the infringing product; reside in the People's Republic of China; and sell their wares through online marketplaces (in this case, Made-in-China and DHGate). [1] ¶¶ 13–17; [16] at 12, 17; [42] at 11.

Shortly after filing its complaint, Erchonia moved for an *ex parte* temporary restraining order, [7], [15], and it later moved for a preliminary injunction, [29]. The Court denied each request for equitable relief, although it granted Erchonia's request for expedited discovery as well as its motion to serve defendants via electronic means under Federal Rule of Civil Procedure 4(f)(3). [13], [18], [19], [40]. With respect to service, Erchonia reasoned that, notwithstanding any applicability of the Hague Service Convention, service of process by email was the most expeditious way to communicate with parties overseas. [16] at 17. Erchonia also argued that service of process by email was "appropriate and necessary" because (1) the defendants "rel[ied] primarily on electronic communications to communicate with their customers," thus "demonstrating the reliability of this method of communication," and (2) Erchonia "is unable to determine the exact physical whereabouts or identities of Defendants." *Id.*; *see also* [8] at 17.

2

In granting Erchonia's motion to serve defendants via electronic means, the Court stated that "electronic service of process does not violate any treaty and is consistent with due process because it is an effective way to communicate with online marketplace defendants." [19] at 2. At the same time, the Court recognized that it was granting Erchonia's request without the benefit of adversarial presentation and indicated a willingness to revisit its order. *Id.* at 2–3.

Since then—and again, as is typical in Schedule A cases—no defendant has pleaded or otherwise defended against this case, and Erchonia has moved for entry of default and default judgment as to and against all defendants. [41]; *see Eicher Motors Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 794 F. Supp. 3d 543, 546–47, 553 (N.D. Ill. 2025) (describing the general trend and trajectory of Schedule A cases in this District); *Luxottica Grp. S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 391 F. Supp. 3d 816, 820 (N.D. Ill. 2019) (same). While Erchonia's motion was pending, the Seventh Circuit issued its decision in *Kangol*, 177 F.4th at 796, holding that electronic service of process on defendants in China violates the Hague Service Convention. This Court then requested, and Erchonia provided, analysis as to why *Kangol* should not preclude entry of default and default judgment. [47]; [48].

## II. Legal Standards

Federal Rule of Civil Procedure 55 provides for "two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (citing *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). Only once default is

3

established does a court consider whether the plaintiff is entitled to the requested relief. *Id.*

The establishment of default is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). But "[b]efore a default can be entered, the court must have subject-matter jurisdiction and jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2682 (4th ed. 2026); *see also be2 LLC v. Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011) (a default judgment entered without personal jurisdiction over the defendant is void); *United States v. Ligas*, 549 F.3d 497, 500 (7th Cir. 2008) ("A district court may not exercise personal jurisdiction over a defendant unless the defendant has been properly served with process.").[1]

### III. Analysis

For years, the majority approach to Schedule A cases among courts in this District has been to allow service of process by email on Chinese defendants based on

---

[1] *See also Tabb v. NaphCare*, 2:21-5541-LK-TLF, 2023 WL 11821158, at *1 (W.D. Wash. July 3, 2023) (a default judgment cannot be entered if plaintiff has not correctly served defendants against whom she seeks default); *Asskia v. Nelson*, 1:21-CV-2567-MLB, 2021 WL 6063960, at *1 (N.D. Ga. Dec. 22, 2021) ("When seeking a default, the plaintiff bears the burden of establishing proper service of process."); *Nieves v. Kiekert AG*, 20-11467, 2020 WL 6335993, at *1 (E.D. Mich. Oct. 29, 2020) ("'Without proper service of process, the district court is without jurisdiction to make an entry of default against a defendant.'") (quoting *Sandoval v. Bluegrass Reg'l Mental Health-Mental Retardation Bd.*, 229 F.3d 1153, No. 99-5018, 2000 WL 1257040, at *5 (6th Cir. 2000)); *Mroszczak v. Tate & Kirlin Associates, Inc.*, 397 F. Supp. 3d 296, 298 (W.D.N.Y. 2019) ("A default judgment may not be granted if the defendant has not been effectively served with process.") (cleaned up); *Turk v. Invacare Corp.*, No. CIV.A. 09-258E, 2010 WL 4740196, at *1 (W.D. Pa. Nov. 16, 2010) (same).

a determination that the Hague Service Convention does not prohibit this method of service. *See Peanuts Worldwide LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 347 F.R.D. 316, 330–31 (N.D. Ill. 2024) (describing the arguments for and against that determination and concluding that the Convention does not prohibit service by email in China). *Kangol*, of course, held otherwise, which has required district courts to change course.

Erchonia urges the Court, in effect, to set aside *Kangol* because the Court should not sua sponte raise a waivable service-of-process defense. [48] at 2, 4–5. Erchonia notes that in *Kangol*, the Seventh Circuit vacated default judgment only as to the single defendant who appeared, moved for vacatur, and appealed the district court's denial of its motion to vacate, and not the defaulting defendants who remained in absentia. *Id.*; *see also Kangol*, 177 F.4th at 795–97. But as the moving party, Erchonia bears the burden of demonstrating that entry of default is appropriate, and that burden includes "the burden of showing that service of process was properly effected consistent with Rule 4 of the Federal Rules of Civil Procedure." *Williams v. Kessler*, 2:17-CV-161-JPK, 2019 WL 1762957, at *2 (N.D. Ind. Apr. 19, 2019) (cleaned up). And as already noted, *see supra* at Section II, before a court can enter default, it must have "jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." WRIGHT & MILLER, *supra*, § 2682; *see also Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 859 (7th Cir. 2016) ("A [default] judgment is also void as to any party who was not adequately served."). The Court therefore cannot enter default without first

5

determining that defendants were properly served, and it cannot make that determination without accounting for *Kangol*.

Turning then to *Kangol*: In that decision, the Seventh Circuit recognized that the Hague Service Convention does not apply where the defendant's address is not known. 177 F.4th at 799; *see also* 20 U.S.T. at 362 (Article 1 of the Convention applies "in all cases … where there is occasion to transmit a judicial or extrajudicial document for service abroad" but "shall not apply where the address of the person to be served with the document is not known"). "District courts handling Schedule A cases typically require plaintiffs to make 'reasonably diligent efforts to ascertain and verify [the] defendant's mailing address' before deeming the defendant's address unknown." *Kangol*, 177 F.4th at 799 (quoting *NBA Props., Inc. v. P'ships and Unincorporated Ass'ns Identified in Schedule "A"*, 549 F. Supp. 3d 790, 796 (N.D. Ill. 2021)) (addition in original).

In response to the Court's post-*Kangol* inquiry, Erchonia detailed its efforts to identify defendants' physical addresses, including its failed attempts to ascertain defendants' true locations using addresses provided on defendants' websites in conjunction with Google Maps, Bing, OpenStreetMaps, and Baidu Maps (a Chinese online mapping service). [48] at 7–8. But Erchonia's description of its searches, bolstered by a declaration and supporting exhibits, reflects that this diligence was done in response to the Court's June 1, 2026, order—not before seeking leave to serve defendants by email on November 19, 2025. [48-1] ¶¶ 3–8, 11; [15].

6

As another district court has held post-*Kangol*: "[T]he question asked by the Hague Convention and Rule 4 is whether the defendant's address was unknown not at the time the defendant raises jurisdiction but at the time the plaintiff moved for substituted service." *Deckers Outdoor Corp. v. A AO*, 25 C 13065, 2026 WL 1802901, at \*5 (N.D. Ill. June 23, 2026). The Court agrees. To have it otherwise would permit an incongruous scenario. Plaintiff sought leave to serve defendants in China by electronic means and moved for alternative service as a matter of course. Only later, with the issue of service again at the forefront, have plaintiffs attempted to perform reasonable diligence retroactively. But the passage of time raises questions as to whether reasonable diligence undertaken in October and November 2025 (when plaintiffs first sought leave for electronic service) would have yielded different results than the reasonable diligence undertaken in June 2026. The information available via the online sources upon which plaintiffs have relied is not static. The incentives also have changed to a degree. Realistically, plaintiffs' goal at this later juncture in the proceedings is to *not* find a viable address.

Erchonia's motion for alternative service, filed at the outset of this litigation, does not reflect reasonably diligent efforts. [16] at 17–18. Rather, Erchonia simply asserts that it "is unable to determine the exact physical whereabouts or identities of Defendants." *Id.*; *see also* [8] at 17. This unsupported statement is plainly insufficient. *See Deckers*, 2026 WL 1802901 at \*5 (granting defendant's motion to vacate default judgment based on a lack of personal jurisdiction because plaintiff "pointed to no actual efforts to find or verify [defendant's] (or any other defendant's) address"); *see*

*also NBA Props., Inc.*, 549 F. Supp. 3d at 796, *aff'd sub nom. NBA Props., Inc. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022) (plaintiff did not demonstrate reasonable diligence when it did not investigate addresses provided by online marketplace, but asserted that "no verification typically occurs for physical addresses"); *cf. Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (plaintiff showed reasonable diligence by investigating physical addresses associated with Chinese online retailer's internet domains by conducting multiple internet searches, calling known phone numbers, and conducting in-person visits where reasonable).

So, Erchonia has not established that the defendants' addresses are "not unknown" such that the Hague Service Convention does not apply. And *Kangol* held that if the Hague Service Convention applies, then service by email is improper because the Convention prohibits service by email in China. 177 F.4th at 801. *Kangol* reached this conclusion via two analytical steps. First, it explained that even though email service is not expressly banned, the Convention "sets out the permitted methods of service and excludes all others." *Id.* at 800. Second, *Kangol* explained that even if email could be considered a postal channel under the Convention's Article 10(a), which allows for service by postal channels as long as the destination state does not object, "it's undisputed that China has objected to service under Article 10(a)." *Id.* at 801.

*Kangol* recognized that the plaintiff there did not "assert that any other portion of the Convention authorizes email service." *Id.* Erchonia, however, does assert that

another portion of the Convention authorizes service by email on defendants in China. It points to Article 19, which provides that "[t]o the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions." 20 U.S.T. at 365; [48] at 9–10. In other words, the Convention does not undermine a country's consent to accept service from abroad through a given means. Erchonia asserts that because Chinese law permits Chinese courts to order service by email on parties outside of China, China cannot credibly object to service by email on its own citizens by foreign courts or litigants. [48] at 9–10. This argument appeals to a sense of fairness: China should not be able to create a double standard by permitting email service for foreign defendants in its courts, but objecting to the same treatment for defendants located in China who are subject to suits in foreign courts.

This Court, however, is not tasked with determining the fairness of Chinese civil procedure, and it does not read Article 19 to require reciprocity. Rather, based on its plain language, Article 19 applies when the internal law of a contracting state allows for its citizens to be served from abroad by a certain method. It does not demand that a contracting state allow its citizens to be served from abroad by any method by which that state permits itself to serve foreign litigants. 20 U.S.T. at 365. The cases Erchonia cites in support of its argument regarding Article 19 do not help. Both were decided before *Kangol* held that the Convention prohibits all unenumerated service methods, and they follow the then-majority approach while

9

also invoking an argument that fairness and reciprocity support treating defendants located in China as Chinese courts would treat defendants abroad as further justification for allowing email service where it was not considered prohibited. *See Milwaukee Elec. Tool Corp. v. Individuals, Corps., Ltd. Liab. Cos., P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 24 C 12487, 2025 WL 3057628, at *3 (N.D. Ill. Nov. 3, 2025); *Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *4 (N.D. Ill. Apr. 1, 2021). Neither case says anything about Article 19; rather, both hew to the majority approach to electronic service under the Convention that *Kangol* has upended. *Id.* Until China itself consents to electronic service from abroad, Article 19 does not create an alternative pathway for allowing electronic service in China.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for entry of default and default judgment [41] is denied. Plaintiff is directed to submit a status report by August 17, 2026 proposing next steps in these proceedings.

ENTER:

_____
Georgia N. Alexakis
United States District Judge

Date: 8/3/2026

10